# EXHIBIT B

**FILED**
**05-10-2022**
**George L. Christenson**
**Clerk of Circuit Court**
**2022CV003016**
**Honorable Pedro Colon-18**
**Branch 18**

STATE OF WISCONSIN
MILWAUKEE COUNTY CIRCUIT COURT

ECLIPSE SERVICE INC.,
a Wisconsin corporation
10031 S. Woodside Court
Franklin, Wisconsin 53132,

   Plaintiff,

 v.

SOLARCODE, LLC,
a Delaware limited liability company,
4343 East Camelback Road, Suite 210
Phoenix, Arizona 85018,

SOLARCODE HOLDINGS, LLC
a Delaware limited liability company,
4343 East Camelback Road, Suite 210
Phoenix, Arizona 85018,

ROGER M. LEHNER
4343 East Camelback Road, Suite 210
Phoenix, Arizona 85018

  and

ROBIN L. LEHNER
9501 Balatta Canyon Court
Las Vegas, Nevada 89144,

   Defendants.

Case Code: 30301 (Money Judgment)

# SUMMONS

THE STATE OF WISCONSIN,

To each above-named Defendant:

 You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within 20 days of receiving this summons (45 days if you are the State of Wisconsin; 60 days if you are the United States of America), you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is Milwaukee County Courthouse, 901 N. Ninth Street, Milwaukee, Wisconsin 53233, and to Gregory W. Lyons of O'Neil, Cannon, Hollman, DeJong & Laing S.C., Plaintiff's attorney, whose address is 111 East Wisconsin Avenue, Suite 1400, Milwaukee, Wisconsin 53202. You may have an attorney help or represent you.

If you do not provide a proper answer within 20 days (45 days if you are the State of Wisconsin; 60 days if you are the United States of America), the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated at Milwaukee, Wisconsin this 10th day of May, 2022.

O'NEIL, CANNON, HOLLMAN, DEJONG & LAING S.C.
Attorneys for Plaintiff Eclipse Service Inc.

*Electronically signed by Gregory W. Lyons*
Gregory W. Lyons
WI State Bar No. 1000492
greg.lyons@wilaw.com
John R. Schreiber
WI State Bar No. 1041490
john.schreiber@wilaw.com
111 East Wisconsin Avenue, Suite 1400
Milwaukee, Wisconsin 53202
(414) 276-5000 – Telephone
(414) 276-6581 – Fax

FILED
05-10-2022
George L. Christenson
Clerk of Circuit Court
2022CV003016
Honorable Pedro Colon-18
Branch 18

STATE OF WISCONSIN
MILWAUKEE COUNTY CIRCUIT COURT

ECLIPSE SERVICE INC.,

    Plaintiff,

v.

SOLARCODE, LLC,
SOLARCODE HOLDINGS, LLC,
ROGER M. LEHNER and
ROBIN L. LEHNER,

    Defendants.

# COMPLAINT

Plaintiff Eclipse Service Inc., by its undersigned attorneys, alleges and complains against the defendants as follows:

1. Eclipse Service Inc. ("Eclipse") is a Wisconsin corporation with a principal office located at 10031 S. Woodside Court, Franklin, Wisconsin 53132.

2. Defendant Solarcode, LLC ("Solarcode") is, upon information and belief, a Delaware limited liability company with a principal office address at 4343 East Camelback Road, Suite 210, Phoenix, Arizona 85018.

3. Defendant Solarcode Holdings, LLC is, upon information and belief, a Delaware limited liability company located at 4343 East Camelback Road, Suite 210, Phoenix, Arizona 85018, and owns 100% of the membership units of Solarcode.

4. Defendant Roger M. Lehner is, upon information and belief, an adult resident of the state of Arizona, located at 4343 East Camelback Road, Suite 210, Phoenix, Arizona 85018.

5. Defendant Robin L. Lehner is, upon information and belief, an adult resident of the

state of Nevada, residing at 9501 Balatta Canyon Court, Las Vegas, Nevada 89144.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this dispute under Wis. Stat. § 801.04(2).

7. This Court has personal jurisdiction over the defendants pursuant to their contractual submission to the jurisdiction of this Court.

8. Venue is proper before this Court pursuant to the defendants' contractual submission to Plaintiff's choice of venue.

## BACKGROUND FACTS

9. On January 13, 2022, Solarcode, Roger M. Lehner and Robin L. Lehner (collectively, "Makers"), for valuable consideration, issued a Business Note to Eclipse (the "Note").

10. A true and correct copy of the Note is attached hereto at **Exhibit A** and its terms are incorporated herein by reference.

11. Eclipse is the lawful owner and holder of the Note.

12. Pursuant to the terms of the Note, Makers jointly and severally promised to make the following payments to Eclipse (the "Scheduled Payments"):

   (a) $60,000, due on or before February 15, 2022;
   (b) $30,000, due on or before February 28, 2022;
   (c) $30,000, due on or before March 15, 2022;
   (d) $30,000, due on or before March 31, 2022;
   (e) $765,000, due on or before April 15, 2022; and
   (f) $3,000,000, payable in four (4) annual installments of $750,000 due on or before January 15 of each year beginning in 2023 and continuing until 2026.

13. Pursuant to the terms of the Note, Makers agreed to pay a daily delinquency charge equal to 10% of any unpaid amounts due under the Note for each day that said amounts remain

unpaid (the "Delinquency Charges").

14. Pursuant to the terms of the Note, Makers also agreed to pay all of Eclipse's costs to collect sums due under the Note both before and after judgment, including reasonable attorneys' fees (the "Costs of Collection").

15. Upon information and belief, Solarcode Holdings, LLC owns 100% of the total membership interests in Solarcode.

16. To secure Makers' payment and performance obligations under the Note, Solarcode Holdings, LLC executed and delivered to Eclipse a collateral assignment of its membership interest in Solarcode, a copy of which is attached hereto at **Exhibit B** (the "Collateral Assignment").

17. Eclipse perfected its right, title and interest in and to said membership interest of Solarcode Holdings, LLC by filing a UCC financing statement with the Delaware Department of State on May 6, 2022, Filing #2022 3840592.

## CLAIMS FOR RELIEF

### COUNT I: MONEY JUDGMENT AGAINST MAKERS

18. Eclipse realleges and incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

19. Makers have failed and refused to make any of the Scheduled Payments when due under the terms of the Note.

20. Makers' failures to make Scheduled Payments when due constitute events of default under the terms of the Note.

21. Specifically, Makers defaulted under the Note upon the first of their missed Scheduled Payments which was due on February 15, 2022.

22.     Pursuant to the terms of the Note, upon the occurrence of event of a default, the unpaid balance of the Note shall, at the option of Eclipse, without any requirement of notice, mature and become immediately payable.

23.     To the extent it has not already done so, Eclipse hereby accelerates and demands payment of the unpaid balance of the Note (an amount which equals $3,915,000.00), plus the Delinquency Charges, plus its Costs of Collection.

24.     Eclipse is therefore entitled to a declaration quantifying the Note indebtedness of Makers, including the accelerated Scheduled Payments, plus the Delinquency Charge, plus all Costs of Collection (collectively, the "Makers' Indebtedness").

25.     Eclipse is therefore further entitled to a money judgment in its favor and against Makers, jointly and severally, in the amount of the Makers' Indebtedness.

**COUNT II: ORDER DIRECTING TURNOVER OF MEMBERSHIP INTEREST**

26.     Eclipse realleges and incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

27.     Pursuant to the terms of the Collateral Assignment of Membership Interest, Solarcode Holdings, LLC assigned its membership interest in and to Solarcode to Eclipse, and Eclipse accepted Solarcode's assignment of said membership interest to secure Makers' payment and performance obligations under the Note.

28.     According to the terms of the Collateral Assignment of Membership Interest, Eclipse rights thereunder, including the assumption of Solarcode Holding, LLC's membership interest in Solarcode, shall be exercisable in the event of a default under the Note.

29.     As a result of Makers' default under the Note, Eclipse is now entitled to Solarcode Holding, LLC's membership interest in Solarcode.

30. As such, Eclipse is entitled to an order directing the immediate turnover of Solarcode Holding, LLC's membership interest in Solarcode to it, along with all assets, books and records of Solarcode (including without limitation all tools, keys, logins and passwords to effectuate the turnover of the same to Eclipse).

WHEREFORE, Plaintiff Eclipse Service Inc. demands:

A. A declaration as to the amount of the Makers' Indebtedness to Eclipse pursuant to the terms of the Note;

B. A monetary judgment in favor of Eclipse Service Inc. and against Defendants Solarcode, Roger M. Lehner and Robin L. Lehner, jointly and severally, in the amount of the Makers' Indebtedness;

C. An order directing Solarcode Holdings, LLC to relinquish and turnover its membership interest in and to Solarcode to Eclipse, including (without limitation) all assets, books and records of Solarcode (including without limitation all tools, keys, logins and passwords to effectuate the turnover of the same to Eclipse).

D. For such other relief as the Court deems just and equitable.

Dated at Milwaukee, Wisconsin this 10th day of May, 2022.

> O'NEIL, CANNON, HOLLMAN, DEJONG & LAING S.C.
> Attorneys for Plaintiff Eclipse Service Inc.
>
> *Electronically signed by Gregory W. Lyons*
> Gregory W. Lyons
> WI State Bar No. 1000492
> greg.lyons@wilaw.com
> John R. Schreiber
> WI State Bar No. 1041490
> john.schreiber@wilaw.com
> 111 East Wisconsin Avenue, Suite 1400
> Milwaukee, Wisconsin 53202
> (414) 276-5000 – Telephone
> (414) 276-6581 – Fax

5

# EXHIBIT A

| BUSINESS ePDF | | | |
|---|---|---|---|
| W. B. A. | 451 (4/20/20) | 11221 | **BUSINESS NOTE** |
| © 2020 Wisconsin Bankers Association/Distributed by FIPCO® | | | (Use only for business purpose loans) |

FIPCO

Boxes checked are applicable.
Boxes not checked are inapplicable.

SOLARCODE, LLC, ROGER M. LEHNER, and ROBIN L. LEHNER, Jointly and Severally _____ January 12, 2022 ___ $ __3,915,000.00__
(MAKER) (DATE)

**1. Promise to Pay and Payment Schedule.** The undersigned ("**Maker**," whether one or more) promises to pay to the order of __ECLIPSE SERVICE INC., a Wisconsin corporation__ ("**Lender**") at __c/o Steven P. Hribar, 1509 North Prospect Avenue, Milwaukee__, Wisconsin, the sum of $ __3,915,000.00__, plus interest as set forth below, according to the following schedule:

(a) Payment of $60,000.00, due on or before February 15, 2022;
(b) Payment of $30,000.00, due on or before February 28, 2022;
(c) Payment of $30,000.00, due on or before March 15, 2022;
(d) Payment of $30,000.00, due on or before March 31, 2022;
(e) Payment of $765,000.00, due on or before April 15, 2022; and
(f) Payment of $3,000,000.00, payable in four (4) annual installments of $750,000.00 due on or before January 15 of each year beginning in 2023 and continuing until 2026.

The amounts due under this Note total $3,915,000.00, plus any other charges that may arise hereunder, regardless of any prepayment.

**2. Interest.** Interest shall accrue before maturity (whether by acceleration or lapse of time) at the stated interest rate(s) identified in section 2(a), (b) or (c) below (each a "stated interest rate"), as applicable, on the unpaid principal balance, calculated as provided in section 2(g) or (h), as applicable, below:

[Check (a), (b) or (c); only one shall apply.]

(a) [X] **Fixed Interest** ~~Rate~~   See above schedule %
(b) [ ] **Stepped Fixed Interest Rate.** __n/a__ % until __n/a__ and __n/a__ % thereafter.
(c) [ ] **Variable Interest Rate.** The stated interest rate is variable and will adjust to equal the Index Rate (as defined below), [ ] plus [ ] minus ____ percentage points. However, the stated interest rate shall not exceed ____% and shall not be less than ____%. [ ] The minimum stated interest rate shall not be applicable until the first rate change date. Until the first change date described below, the stated interest rate shall be ____ %. The stated interest rate shall be adjusted on the change dates provided below. The "**Index Rate**" is: _____

The Index Rate may or may not be the lowest rate charged by Lender. The stated interest rate shall be adjusted on the following change dates: _____

If the Index Rate ceases to be made available to Lender during the term of this Note, Lender may substitute a comparable Index.

(d) **Payment Modification.** If section 2(b) or (c) above is checked, an adjustment in the stated interest rate will result in an increase or decrease in (1) [ ] the amount of each payment of interest, (2) [ ] the amount of the final payment, (3) [ ] the number of scheduled periodic payments sufficient to repay this Note in substantially equal payments, (4) [ ] the amount of each remaining payment of principal and interest so that those remaining payments will be substantially equal and sufficient to repay this Note by its scheduled maturity date, (5) [ ] the amount of each remaining payment of principal and interest (other than the final payment) so that those remaining payments will be substantially equal and sufficient to repay this Note by its scheduled maturity date based on the original amortization schedule used by Lender, plus the final payment of principal and interest, or (6) [ ] _____. In addition, Lender is authorized to change the amount of periodic payments if and to the extent necessary to pay in full all accrued interest owing on this Note. Maker agrees to pay any resulting payments or amounts.

(e) **Interest After Maturity and Application of All Payments.** Interest shall accrue on unpaid principal and interest after maturity (whether by acceleration or lapse of time) until paid [ ] at the stated interest rate(s) under section 2(a), (b) or (c) above, as applicable, plus ____ percentage points [ ] at the stated interest rate of ____%, calculated as provided in section 2(g) or (h), as applicable, below. All payments applied to this Note shall be applied in such order as Lender determines to interest, principal and payments due under this Note or any agreement securing this Note.

(f) [X] **Compounding.** Prior to maturity (whether by acceleration or lapse of time), unpaid and past due interest shall bear interest from its due date at the stated interest rate then in effect for this Note under Section 2(a), (b) or (c) above, as applicable, calculated as provided in section 2(g) or (h), as applicable, below.

(g) [ ] **Interest Calculation (Actual Days).** Interest will be calculated by applying a daily interest rate for the actual number of days interest is owing, up to 365 days in a full year or 366 days in a full leap year. The daily interest rate will be calculated as follows:

[Check (1) or (2); only one shall apply.]

(1) [ ] 360 Day Rate Calculation. The daily interest rate will be calculated on the basis of a 360 day year, which means that it is calculated by dividing the applicable stated interest rate in section 2(a), (b) or (c), above, as applicable, and in section 2(e), above, by 360. **Maker understands and agrees that calculating the daily interest rate using a 360 day year means the actual annual interest rate in a 365 day year and in a 366 day leap year is higher than the stated interest rate in section 2(a), (b) or (c), above, as applicable, and in section 2(e), above.**

(2) [ ] 365 Day Rate Calculation. The daily interest rate will be calculated on the basis of a 365 day year, which means that it is calculated by dividing the applicable stated interest rate in section 2(a), (b) or (c), above, as applicable, and in section 2(e), above, by 365. **Maker understands and agrees that calculating the daily interest rate using a 365 day year means the actual annual interest rate in a 366 day leap year is higher than the stated interest rate in section 2(a), (b) or (c), above, as applicable, and in section 2(e), above.**

(h) [ ] **Interest Calculation (30/360).** Interest will be calculated by applying the applicable stated interest rate based on a 360 day year, counting each day as one thirtieth of a month and disregarding differences in lengths of months and years.

**3. Other Charges.** If any payment ~~(other than the final payment)~~ is not made on or before ~~the ____ day after~~ its due date, Lender may collect a ~~delinquency charge of [ ] ____% of the unpaid amount [ ] $____~~. Maker agrees to pay a charge of $ __50.00__ for each check or electronic debit presented for payment under this Note which is returned unsatisfied. daily delinquency charge of 10.00% of the unpaid amount for each day that any amount of the delinquent payment is unpaid.

**4. Collateral Disclaimer.** [ ] Lender disclaims as collateral security for this Note (i) any real estate mortgage or security agreement covering real property on which any building is located in a special flood hazard area, and (ii) any mobile home located in a special flood hazard area, when such collateral security arises under a mortgage or agreement between Lender [ ] and Maker [ ] and any indorser or guarantor of this Note or any other person providing collateral security for Maker's obligations; provided, however, **Lender does not disclaim any such collateral security arising under a real estate mortgage or security agreement taken contemporaneously with this Note or real estate mortgage(s) or security agreement(s) in favor of Lender, whenever taken, from _____ dated _____.** A special flood hazard area is an area designated as such under the National Flood Insurance Program.

**5. Renewal.** [ ] This Note renews and does not satisfy or discharge a note Maker executed to Lender dated _____.

**6. Prepayment.** Full or partial prepayment of this Note [X] is permitted at any time ~~without penalty~~ [ ] _____.

THIS NOTE INCLUDES ADDITIONAL PROVISIONS ON PAGE 2.

SOLARCODE, LLC, a Delaware limited liability company, ROGER M. LEHNER, an individual, and ROBIN L. LEHNER, an individual, shall be jointly and severally liable for full performance of Maker's obligations set forth in this Note.

**MAKER:**
SOLARCODE, LLC, a Delaware limited liability company
By: SOLARCODE HOLDINGS, LLC, a Delaware limited liability company, its Sole Member

By: _____/s/_____ (SEAL)
    Roger M. Lehner, its Member

**ACKNOWLEDGMENT**

STATE OF __NEVADA__ )
                    )ss
COUNTY OF __CLARK__ )

On January __13__, 2022, before me, a Notary Public, personally appeared Roger M. Lehner and Robin L. Lehner, known to me (or proved to me on the basis of satisfactory evidence) to be the persons whom executed this instrument and acknowledged the same.

__J. DAVIDSON__   _/s/ J Davidson_
Name:
Notary Public, State of __NEVADA__
My commission expires: __11/07/2025__

_____/s/_____ (SEAL)
Roger M. Lehner, Personally

_____/s/_____ (SEAL)
Robin L. Lehner, Personally

FOR LENDER CLERICAL USE ONLY
LOAN OFFICER

Page 1 of 2

ADDITIONAL PROVISIONS

**7. Default and Enforcement.** Upon the occurrence of any one or more of the following events of default: (a) Maker fails to pay any amount when due under this Note or under any other instrument evidencing any indebtedness of Maker to Lender, (b) any representation or warranty made under this Note or information provided by Maker or any guarantor of this Note to Lender in connection with this Note is or was false or fraudulent in any material respect, (c) a material adverse change occurs in Maker's financial condition, (d) Maker fails to timely observe or perform any of the covenants or duties contained in this Note, (e) any guarantee of Maker's obligations under this Note is revoked or becomes unenforceable for any reason, (f) Maker, Maker's spouse or a surety or guarantor of this Note dies or ceases to exist, (g) an event of default occurs under any agreement securing this Note, or (h) Lender at any time believes in good faith that the prospect of payment or performance under this Note, under any other instrument evidencing any indebtedness of Maker to Lender or under any agreement securing this Note is impaired, then the unpaid balance shall, at the option of Lender, without notice, mature and become immediately payable. The unpaid balance shall automatically mature and become immediately payable in the event any Maker or any surety, indorser or guarantor for any of Maker's obligations under this Note becomes the subject of bankruptcy or other insolvency proceedings. Lender's receipt of any payment on this Note after the occurrence of an event of default shall not constitute a waiver of the default or the Lender's rights and remedies upon such default. Lender may waive any default without waiving any other subsequent or prior default by Maker. Lender may also fail or delay in exercising any right, power or remedy under this Note without waiving any such right, power or remedy. Lender's single or partial exercise of any right, power or remedy under this Note shall not preclude any other or further exercise of any right, power or remedy. To the extent not prohibited by law, Maker consents that venue for any legal proceeding relating to collection of this Note shall be, at Lender's option, the county in which Lender has its principal office in Wisconsin, the county and state in which any Maker resides or the county and state in which this Note was executed and Maker submits to the jurisdiction of any such court. \*\*

**8. Security.** Except for collateral disclaimed as security for this Note under section 4 on page 1 of this Note, this Note is secured by all existing and future security agreements and mortgages between Lender and Maker, between Lender and any indorser or guarantor of this Note, and between Lender and any other person providing collateral security for Maker's obligations, and payment may be accelerated according to any of them. Unless a lien would be prohibited by law or would render a nontaxable account taxable, Maker grants to Lender a security interest and lien in any deposit account Maker may at any time have with Lender. Lender may, at any time after an occurrence of an event of default, without notice or demand, set-off against any deposit balance or other money now or hereafter owed any Maker by Lender any amount unpaid under this Note.

**9. Rights of Lender.** All rights and remedies of Lender are cumulative and may be exercised from time to time together, separately, and in any order. Without affecting the liability of any Maker, indorser, surety, or guarantor, Lender may, without notice, accept partial payments, release or impair any collateral security for the payment of this Note or agree not to sue any party liable on it. Lender may apply prepayments, if permitted, to such future installments as it elects. Lender may without notice to Maker apply payments made by or for Maker to any obligations of Maker to Lender. Without affecting the liability of any indorser, surety or guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

**10. Obligations and Agreements of Maker.** The obligations under this Note of all Makers are joint and several. All Makers, indorsers, sureties, and guarantors agree to pay all costs of collection before and after judgment, including reasonable attorneys' fees (including those incurred in successful defense or settlement of any counterclaim brought by Maker or incident to any action or proceeding involving Maker brought pursuant to the United States Bankruptcy Code) and waive presentment, protest, demand and notice of dishonor. Maker agrees to indemnify and hold harmless Lender, its directors, officers, employees and agents, for, from and against any and all claims, damages, judgments, penalties, and expenses, including reasonable attorneys' fees, arising directly or indirectly from credit extended under this Note or the activities of Maker. This indemnity shall survive payment of this Note. Each Maker acknowledges that Lender has not made any representations or warranties with respect to, and that Lender does not assume any responsibility to Maker for, the collectability or enforceability of this Note or the financial condition of any Maker. Each Maker has independently determined the collectability and enforceability of this Note. Maker represents that the legal name of Maker and the address of Maker's principal residence are as set forth on page 1. Maker shall not change its legal name or address without providing at least 30 days' prior written notice of the change to Lender.

**11. Entire Agreement. THIS NOTE IS INTENDED BY LENDER AND MAKER AS A FINAL EXPRESSION OF THIS NOTE AND AS A COMPLETE AND EXCLUSIVE STATEMENT OF ITS TERMS, THERE BEING NO CONDITIONS TO THE ENFORCEABILITY OF THIS NOTE, AND THIS NOTE MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES TO THIS NOTE. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES TO THIS NOTE. THIS NOTE MAY NOT BE SUPPLEMENTED OR MODIFIED EXCEPT IN WRITING SIGNED BY LENDER AND MAKER.**

**12. Interpretation.** This Note benefits Lender, its successors and assigns, and binds Maker and Maker's heirs, personal representatives, successors and assigns. The validity, construction and enforcement of this Note are governed by the internal laws of Wisconsin except to the extent such laws are preempted by federal law. Invalidity or unenforceability of any provision of this Note shall not affect the validity or enforceability of any other provisions of this Note.

**13. Other Provisions.** ~~If none stated there are no other provisions.~~

(a) Maker shall pay any and all broker or similar fees that may arise in connection with this Note and/or the loan evidenced by this Note.

(b) This Note may be executed in several counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument for the purposes of creating a valid, enforceable, and binding legal instrument.

(c) If, at any time prior to full payment of all amounts due under this Note, SolarCode, LLC, and/or its affiliates, consummates any transaction(s) contemplated in that certain Power Purchase Agreement dated August 31, 2021 executed with Sand Energies of Morocco, and/or that certain Power Purchase Agreement dated August 24, 2021 executed with Agronomics by G Square Land Development, then all amounts due under this Note in the amount of $3,915,000.00, plus any charges arising hereunder, less any payments previously made, shall be due and payable immediately upon consummation of such transaction(s).

(d) This Note and Maker's obligations hereunder are secured by that certain Collateral Assignment of Membership Interest bearing an even date herewith, executed by SolarCode Holdings, LLC, a Delaware limited liability company, in favor of Lender for the purpose of providing as collateral the sole membership interest in SolarCode, LLC, a Delaware limited liability company.

(e) Upon the occurrence of any event of default under this Note, whether cured or uncured, all amounts due under this Note in the amount of $3,915,000.00, plus any other charges arising hereunder, less any payments previously made, shall be due and payable immediately upon such occurrence of any event of default.

(f) This Note consolidates a prior balance of $361,000.00 owed under that previous Note dated October 19, 2021 executed by Maker in favor of Lender, plus new Lender advances of $239,000.00 and closing costs of $10,000.00 disbursed by Lender via wire transfer upon execution of this Note.

(g) All Makers acknowledge and agree that the loan evidenced by this Note is solely for the business purpose of Maker, and is not for personal, family, household, or agricultural purposes.

\*\* **All Makers irrevocably waive any objection to the venue of any legal process in these courts on the basis that process has been brought in an inconvenient forum.**

**NEVADA INDIVIDUAL ACKNOWLEDGMENT**

State of Nevada  
County of __CLARK__ } ss.

This instrument was acknowledged before me on this the __13th__ day of __JANUARY__, 20__22__, by

(1) __ROGER M. LEHNER__ (,)  
Name of Signer

(and

(2) __ROBIN L. LEHNER__ .)  
Name of Signer

J DAVIDSON  
Notary Public-State of Nevada  
Appointment No. 01-86734-1  
My Appointment Expires 11-07-2025

Place Notary Seal and/or Stamp Above

_____  
Signature of Notary Public

———— OPTIONAL ————

Though the information in this section is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**

Title or Type of Document: __BUSINESS NOTE__  
Document Date: __JANUARY 13, 2022__ Number of Pages: __1 PG__  
Signer(s) Other Than Named Above: __N/A__

© 2013 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5915

# EXHIBIT B

## COLLATERAL ASSIGNMENT OF MEMBERSHIP INTEREST

THIS COLLATERAL ASSIGNMENT OF MEMBERSHIP INTEREST (this "Assignment") is made as of October 15, 2021 by SOLARCODE HOLDINGS, LLC, a Delaware limited liability company ("Member"), for the benefit of ECLIPSE SERVICE INC., a Wisconsin corporation ("Lender"). Member and Lender are collectively referred to herein as the "Parties."

### RECITALS

A.  Member owns 100.00% of the total membership interests (the "Membership Interest") in SOLARCODE, LLC, a Delaware limited liability company (the "LLC").

C.  Lender has agreed to make a loan to the LLC for business purposes in the principal amount of $3,915,000.00 (the "Loan") pursuant to, and in accordance with the terms of, that certain Business Note dated January 12, 2022 (the "Note"), executed by the LLC, Roger M. Lehner, and Robin L. Lehner (collectively, "Maker") in favor of Lender.

D.  As a condition to Lender making the Loan and to induce Lender to accept the Note, Lender requires that Member collaterally assign the Membership Interest to Lender as collateral security for Maker's payment and performance of its obligations under the Note.

E.  Accordingly, Member wishes to collaterally assign the Membership Interest to Lender as security for Maker's payment and performance of its obligations under the Note, and Lender wishes to accept such assignment.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants, conditions, and agreements set forth in this Assignment, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.  <u>Assignment</u>. Member hereby collaterally assigns to Lender, and Lender hereby accepts, Member's right, title, and interest in and to the Membership Interest as security for Maker's payment and performance of its obligations under the Note. Lender's rights hereunder shall be exercisable only in the event of a default under the Note, and Lender's rights in the Membership Interest afforded hereby shall not be invalidated, impaired, or ceased so long as any of Maker's obligations under the Note remain outstanding.

2.  <u>Confirmation and Undertaking of the Membership Interest</u>. To induce Lender to provide the financing evidenced by the Note, and in consideration thereof, Member, by executing and delivering this Agreement: (a) acknowledges the security interest granted to Lender under this Assignment; (b) confirms the provisions and the warranties contained in this Assignment; (c) confirms that it knows of no other pledge, assignment, transfer, conveyance, or encumbrance of the Membership Interest; and (d) agrees that, unless otherwise directed by Lender in writing, it will make all payments directly to Lender.

3.  <u>Member's Warranties</u>. Member warrants that, at all times while any of Maker's obligations under the Note remain outstanding:

    (a)  Member owns the Membership Interest free and clear of all encumbrances and security interests (except Lender's security interest granted hereby) with complete authority (subject to applicable law) to collaterally assign such Membership Interest to Lender. Without the prior written

consent of the Lender, Member shall not (i) modify or in any way alter the Membership Interest, or (ii) pledge, assign, transfer, or convey the Membership Interest to any other party;

　　　　　(b)　　Member has the full right to collaterally assign the Membership Interest under the terms of this Assignment; and

　　　　　(c)　　The execution and delivery of this Assignment will not violate or constitute a breach of any agreement or instrument to which Member is a party or is subject.

　　4.　　Rights to Membership Interest. None of the following shall affect the liabilities of Member under this Assignment or the rights of Lender with respect to the Membership Interest:

　　　　　(a)　　acceptance or retention by Lender of other property or interests as security for Maker's payment and performance of its obligations under the Note, or for the liability of any person or entity other than Maker with respect to the Maker's payment and performance of its obligations under the Note;

　　　　　(b)　　the release of all or any other security for Maker's payment and performance of its obligations under the Note;

　　　　　(c)　　any release, extension, renewal, modification, or compromise of Maker's payment and performance of its obligations under the Note or the liability of any obligor thereon; or

　　　　　(d)　　failure by Lender to resort to other security or any person or entity liable for Maker's payment and performance of its obligations under the Note before resorting to the Membership Interest.

　　5.　　Default. In the event any representation or warranty by Member or Maker, whether under this Assignment or the Note, is false or any default or event of default under the Note occurs and remains uncured upon expiration of any cure period set forth therein, then any such event shall constitute a default under this Assignment and Lender may take any action Lender deems advisable with respect to the Membership Interest including, without limitation, enforcing any rights under the Note and/or settling or compromising any claim thereunder without Member's consent, and taking possession of the Membership Interest and placing the same in Lender's name. The settlement or compromise by Lender of any claim pursuant to this Section may be for such amount and on such terms as Lender, in its sole and absolute discretion, determines.

　　6.　　Waiver. Any failure or delay by Lender to act on any default under this Assignment or the Note shall not be construed as nor constitute waiver of such default or any succeeding default.

　　7.　　Expenses. Member shall pay any and all costs and expenses incurred by Lender in connection with the enforcement of the provisions of this Assignment including, without limitation and to the fullest extent allowed by law, actual attorneys' fees and court costs.

　　8.　　Termination. Upon Maker's full payment and performance of its obligations under the Note and this Assignment, this Assignment shall terminate and Lender shall release or cause to be released its security interest in the Membership Interest.

　　9.　　Binding Effect. This Assignment shall be binding upon and inure to the benefit of the Parties and their respective successors-in-interest, agents, and assigns.

Collateral Assignment of Membership Interest<br>Page 2 of 4

10. **Severability**. Any determination that any provision of this Assignment is unenforceable or invalid shall not render any remaining parts hereof unenforceable or invalid.

11. **Governing Law**. This Assignment shall be governed by and interpreted in accordance with the internal laws of the State of Wisconsin, without regard to any conflict-of-laws principles.

12. **Amendment and Modification**. This Assignment may only be amended, modified, or supplemented by written agreement duly executed by the Parties.

13. **Authority of Signatories**. Any person executing this Assignment on behalf of a legal entity represents and warrants that he or she is fully and duly authorized to execute this Assignment on behalf of such entity, and to bind such entity to the terms and provisions contained in this Assignment.

14. **Counterparts**. This Assignment may be executed in several counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This Assignment may be executed and delivered by any party by facsimile or electronic mail transmission in portable document format (PDF), and any Assignment or counterpart thereof so executed and delivered shall be considered an original for the purposes of creating a valid and binding legal instrument.

*[SIGNATURE PAGE FOLLOWS]*

IN WITNESS WHEREOF, to evidence the Parties' agreement to this Assignment, the undersigned have executed and delivered this Assignment as of the date stated in the preamble.

**MEMBER:**
SOLARCODE HOLDINGS, LLC,
a Delaware limited liability company

By: _____
Roger M. Lehner, its Member

**LENDER ACKNOWLEDGMENT & ACCEPTANCE:**
ECLIPSE SERVICE INC.,
a Wisconsin corporation

By: _____
Steven P. Hribar, its President

Collateral Assignment of Membership Interest
Page 4 of 4