# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ECLIPSE SERVICE INC.,

                  Plaintiff,

v.

SOLARCODE, LLC, SOLARCODE
HOLDINGS, LLC, ROGER M. LEHNER,
and ROBIN L. LEHNER[1],

                  Defendants.

Case No. 22-CV-757-JPS

**ORDER**

      This case comes before the Court on Plaintiff Eclipse Service Inc.'s ("Eclipse") motion for summary judgment, ECF No. 32, and Defendants SolarCode, LLC ("SolarCode"), SolarCode Holdings, LLC ("SolarCode Holdings"), and Roger M. Lehner ("Roger") (together, "Defendants") motion for partial judgment on the pleadings, ECF No. 40. For the reasons set forth below, the Court grants in part and denies in part Eclipse's motion for summary judgment and denies Defendants' motion for partial judgment on the pleadings.[2]

---

[1]The proceedings are stayed as against Defendant Robin L. Lehner. *See* ECF No. 26; *see also* 11 U.S.C. § 362. For ease of reference, the Court will refer to the remaining defendants as "Defendants," but this Order operates as to only SolarCode, SolarCode Holdings, and Roger, each as defined herein. Following the eventual entry of the partial final judgment described below, *see* Fed. R. Civ. P. 54(b), the case will be administratively closed pending the lifting of the stay as to Defendant Robin L. Lehner.

[2]Eclipse also filed two motions to restrict. ECF Nos. 34, 45. The information and documents subject to the motions to restrict are legitimately confidential within the terms of the parties' Protective Order, ECF No. 16, the Federal Rules of Civil Procedure, and applicable case law. Therefore, the motions will be granted,

# 1. LEGAL STANDARD

## 1.1 Rule 56

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

## 1.2 Rule 12(c)

Rule 12(c) motions are evaluated under the same standard as motions to dismiss brought pursuant to Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). To state a claim sufficient to withstand a Rule 12(b)(6) motion, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations must "plausibly suggest that the plaintiff has a right to relief." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations and quotations

---

and the Clerk of Court will be directed to maintain in restricted form the information and documents subject to the motions to restrict.

omitted). The Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81.

## 2.    RELEVANT FACTS ON SUMMARY JUDGMENT[3]

### 2.1    Background

SolarCode is a design/build power plant developer in the business of providing the development, construction, and maintenance of solar-based power plants for its prospective clients as well as electricity to the wholesale power market. SolarCode is in the process of obtaining funding to construct a system to produce solar energy and desalinate water, including a 550-megawatt power plant in the country of Morocco pursuant to an agreement between SolarCode and Sand Energies of Morocco.

The sole member of SolarCode is SolarCode Holdings. SolarCode Holdings acquired SolarCode from Lehner Enterprises, LLC for the sum of $15,300,000. Roger is presently the sole member of SolarCode Holdings.

### 2.2    The 2021 Note

On October 19, 2021, SolarCode, Roger, and Defendant Robin L. Lehner (collectively, "Makers") executed a Business Note (the "2021 Note"). The Note was delivered to Eclipse. The 2021 Note includes the following repayment schedule:

---

[3]The parties submitted a stipulated statement of undisputed facts, which were the product of a meet-and-confer between the parties, in accordance with the Court's summary judgment protocols. ECF No. 33. The Court therefore adopts those stipulated facts that are *material*, with minor, non-substantive edits, including omitting internal citations for brevity. Eclipse and Defendants also each submitted a one-page statement of itemized disputed facts, ECF Nos. 35, 44, which the Court discusses where applicable in the "Analysis" section.

a) $30,000, due on or before November 30, 2021;

b) $30,000, due on or before December 15, 2021;

c) $30,000, due on or before December 30, 2021; and

d) $320,000 due on or before January 17, 2022.

The 2021 Note identifies that Eclipse would disburse $308,000 in loan proceeds to Makers as follows: $275,000 to Makers via wire transfer, $28,000 to Steve Yahnke (a loan broker) via cashier's check, and $5,000 to the law firm Mawicke & Goisman, S.C. via company check. The same day, Eclipse wired the sum of $275,000 to Makers (the "October 19, 2021 Payment"). On December 16, 2021, Makers disbursed a $30,000 payment to Eclipse to be applied toward the 2021 Note balance.

### 2.3 The 2022 Note

On January 13, 2022, Makers executed a second Business Note (the "2022 Note"). The 2022 Note was delivered to Eclipse. Roger signed the 2022 Note personally and as member of SolarCode Holdings, and Defendant Robin L. Lehner signed the 2022 Note personally. The 2022 Note identifies that it consolidated a prior balance of $361,000 owed to Eclipse by the Makers under the 2021 Note, plus a new advance of $239,000 and closing costs to be disbursed upon execution of the 2022 Note. The 2022 Note includes the following repayment schedule (the "Scheduled Payments"):

a) $60,000, due on or before February 15, 2022;

b) $30,000, due on or before February 28, 2022;

c) $30,000, due on or before March 15, 2022;

d) $30,000, due on or before March 31, 2022;

e) $765,000, due on or before April 15, 2022; and

f) $3,000,000, payable in four (4) annual installments of $750,000, each due on or before January 15 of each year beginning in 2023 and continuing until 2026.

Pursuant to the terms of the 2022 Note, Makers agreed to pay all of Eclipse's costs to collect sums due under the 2022 Note both before and after judgment, including reasonable attorneys' fees. Eclipse is the holder of the 2022 Note: Eclipse is in possession of the 2022 Note, and the 2022 Note is issued to the order of Eclipse.

On January 14, 2022, Eclipse wired $239,000 to Makers as a disbursement under the 2022 Note (the "January 14, 2022 Payment"). Altogether, Makers received a total of $514,000 in loaned funds from Eclipse (including the October 19, 2021 Payment of $275,000 and the January 14, 2022 Payment of $239,000).

Makers failed to make any of the Scheduled Payments to Eclipse under the 2022 Note. Pursuant to the 2022 Note, "[u]pon the occurrence of any . . . event[] of default . . . then the unpaid balance shall, at the option of [Eclipse], without notice, mature and become immediately payable."

Eclipse has accelerated and demanded payment by Makers of the entire unpaid balance of the 2022 Note, plus delinquency charges and Eclipse's costs of collection. SolarCode and Roger admit that they executed the 2022 Note voluntarily.

### 2.4   The Collateral Assignment of the Membership Interest

SolarCode Holdings executed and delivered to Eclipse a collateral assignment of its membership interest in SolarCode (the "Collateral Assignment of Membership Interest"), which expresses it was an agreement made as of October 15, 2021. The Collateral Assignment of Membership Interest states, "Member hereby collaterally assigns to Lender,

. . . Member's right, title, and interest in and to the Membership Interest as security for Maker's payment and performance of its obligations under the Note . . . ."

According to the terms of the Collateral Assignment of Membership Interest,

> In the event any . . . default or event of default under the Note occurs or remains uncured upon expiration of any cure period set forth therein, then any such event shall constitute a default under this Assignment and Lender may take any action Lender deems advisable with respect to the Membership Interest including, without limitation, enforcing any rights under the Note and/or settling or compromising any claim thereunder without Member's consent, and taking possession of the Membership Interest and placing the same in Lender's name. . . .

The 2021 Note, the 2022 Note, and the Collateral Assignment of Membership Interest each state that they are governed by Wisconsin law.

3.      **ANALYSIS**

    3.1      **Eclipse's Motion for Summary Judgment – Amount Owed**

Eclipse first moves for a money judgment in the amount of Defendants' obligations under the 2022 Note, plus statutory post-default and prejudgment interest commencing on February 15, 2022 at the statutory prejudgment interest rate of 5% per annum "on the unpaid liquidated principal balance thereof," plus Eclipse's "costs of collection, including, without limitation, reasonable attorneys' fees." ECF No. 32.

Defendants' main argument is that a genuine and material fact dispute exists as to the amount of the balance of the 2022 Note and whether the 2022 Note's acceleration clause only accelerates repayment of the unpaid balance of the note. ECF No. 43 at 2; ECF No. 44. According to

Defendants, the phrase "unpaid balance" in the 2022 Note, construed according to its "plain or ordinary meaning consistent with what a reasonable person would understand the words to mean under the circumstances," means "the remaining balance of a loan, cash advance or credit that has not been paid." ECF No. 43 at 2 (citations omitted) (quoting The Law Dictionary, 2023).

Relying on this definition, Defendants argue that the 2022 Note represents an agreement by Eclipse to distribute $3,915,000 to Defendants. *Id.* However, Eclipse only disbursed a total of $514,000. *Id.* at 2–3. As a result, Defendants assert that a reasonable person would understand the words "unpaid balance" to mean the amount that Eclipse had actually paid to Defendants (and which Defendants had not repaid), plus interest. *Id.* at 3 (citing *Carmichael v. The Payment Ctr., Inc.*, 336 F.3d 636, 641 (7th Cir. 2003)). Moreover, because Eclipse never disbursed the majority of the 2022 Note's "principal sum," it would be inequitable to invoke the acceleration clause. *Id.* at 3.

To begin, the Court agrees with Eclipse that the 2022 Note does not include an agreement by Eclipse to distribute $3,915,000 to Defendants. ECF No. 46 at 2. The 2022 Note clearly and unequivocally states that it "consolidates a prior balance of $361,000 owed under [the 2021 Note] . . . plus new Lender advances of $239,000 and closing costs of $10,000 disbursed by Lender via wire transfer upon execution of this Note," or, put another way, that it entails a total payment by Eclipse to Defendants of $514,000. ECF No. 33-2 at 3. The $3,915,000 figure appears only in the "Promise to Pay and Payment Schedule," which prescribes Makers' obligations to Eclipse, and in two clauses under "Other Provisions" stating, in pertinent part: (1) "[u]pon the occurrence of any event of default under

this Note . . . all amounts due under this Note in the amount of $3,915,000.00 . . . shall be due and payable immediately . . . .;" and (2) if, prior to full payment of all amounts due, SolarCode and/or its affiliates consummate any transaction contemplated in their agreement with Sand Energies of Morocco, "then all amounts due under this Note in the amount of $3,915,000.00 . . . shall be due and payable immediately . . . ." *Id.* at 2, 3.

Therefore, the issues are properly understood as whether a reasonable person would understand the phrase "unpaid balance" to refer to the $3,915,000 (the amount Defendants promised to pay in exchange for a loan) or $514,000 (the amount of the loan), and whether understanding the phrase as the former would be inequitable.

The Court takes up the meaning of "unpaid balance" first. Under Wisconsin law, "contract language is construed according to its plain or ordinary meaning, consistent with what a reasonable person would understand the words to mean under the circumstances." *Tufail v. Midwest Hosp., LLC*, 833 N.W.2d 586, ¶ 28 (Wis. 2013) (internal citations & quotations omitted). If a contract "is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract." *Jahn v. Tessmer*, 812 N.W.2d 539, ¶ 15 (Wis. Ct. App. 2012) (citation omitted). Whether a contract is unambiguous is a question of law. *Id.* Simply because a term is not defined in the contract or has more than one dictionary definition does not mean that term is ambiguous. *Id.*, ¶ 18.

Within the four corners of the 2022 Note, the term "balance" is used in three places other than the "unpaid balance" provision to which Defendants point. *See Sonday v. Dave Kohel Agency, Inc.*, 718 N.W.2d 631, ¶ 21 (Wis. 2006) ("We interpret a contract to give reasonable meaning to each provision and without rendering any portion superfluous.") (internal

quotations omitted). First, it is used in the "Interest" section. ECF No. 33-2 at 2 ("Interest shall accrue . . . on the unpaid principal balance . . . "). Next, it is used in the "Security" section. *Id.* at 2 ("Lender may . . . after an occurrence of an event of default . . . set-off against any deposit balance or other money now or hereafter owed any Maker by Lender any amount unpaid under this Note."). Finally, it is used in the "Other Provisions" section. *Id.* ("This Note consolidates a prior balance of $361,000.00 owed under [the 2021 Note] . . . .").

The "unpaid principal balance" clause supports Defendants' position, while the "prior balance" clause supports Eclipse's position. The "deposit balance" clause is largely irrelevant, but tilts towards supporting Eclipse's position, as it uses "balance" to refer to funds Defendants would pay to Eclipse.

However, the "unpaid principal balance" clause clearly inserts the word "principal," evincing an intent to refer only to the amount actually paid. *See, e.g.*, Principal, Oxford English Dictionary ("[T]he sum lent or invested upon which interest is paid.").[4] The "prior balance" clause uses the word "balance" to refer to an amount owed by Defendants to Eclipse ($361,000), which was higher than the amount paid by Eclipse to Defendants ($308,000) under the 2021 Note. This shows an intent to use the word "balance" to refer to the amount due and owing under the Note, even if that amount is higher than what was loaned. *See, e.g.*, Balance, Oxford English Dictionary ("[T]he sum still outstanding on an account.").[5] Therefore, the word "balance," standing alone and without the "principal"

---

[4] *Available at* https://www.oed.com (last visited June 1, 2023).

[5] *Available at* https://www.oed.com (last visited June 1, 2023).

Case 2:22-cv-00757-JPS   Filed 06/02/23   Page 9 of 21   Document 49

modifier, unambiguously and literally refers to the amount due and owing to Eclipse under the 2022 Note. *Betz v. Diamond Jim's Auto Sales*, 849 N.W.2d 292, ¶¶ 66, 68 (Wis. 2014) (Abrahamson, C.J., dissenting) (contracts are to be "interpreted as a whole" and with "the context of the transaction" in mind) (collecting cases).

Further, as explained, the $3,915,000 figure is listed three times in the 2022 Note, all in the context of Defendants' obligations to Eclipse. One of those uses shows that the parties contemplated the high return amount to Eclipse—and the underlying financing request—as deriving from Defendants' contract with Sand Energies of Morocco. Defendants previously signed the 2021 Note with Eclipse where they also accepted financing in exchange for a higher amount due. When they defaulted on that obligation, Eclipse raised the stakes—and the risk for Defendants—in the 2022 Note. Eclipse's statement of disputed facts, which Defendants do not challenge in their briefing, demonstrate that Defendants signed several agreements for up-front financing in exchange for a higher amount due and owing later, including one with a significantly greater difference between the amounts than those set forth in the 2022 Note. ECF No. 46 at 8–9 (details redacted at ECF No. 47).

With this context in mind, coupled with the use of the word "balance" in the 2022 Note and the plain and ordinary meaning of the term, the Court "conclude[s] that here the [phrase 'unpaid balance'] is not susceptible to more than one reasonable interpretation in the context of the parties' agreements." *Jahn*, 812 N.W.2d, ¶ 18. That interpretation is that "unpaid balance" refers to any amount unpaid by Defendants of $3,915,000.

As to whether understanding "balance" in this manner would "lead to an absurd and unconscionable result," ECF No. 43 at 6, a brief discussion

of Wisconsin law on negotiable instruments and usury becomes necessary. The parties do not dispute that the 2022 Note is a negotiable instrument. Wis. Stat. § 403.104(1) defines a negotiable instrument as, in pertinent part, "an unconditional promise to pay a fixed amount of money, with or without interest or other charges described in the promise or order" if "[i]t is payable on demand or at a definite time." A negotiable instrument may also include the power to "give, maintain or protect collateral to secure payment," "[a]n authorization or power to the holder to confess judgment or realize on or dispose of collateral," and/or "[a] waiver of the benefit of any law intended for the advantage or protection of an obligor." Wis. Stat. § 403.104(1)(c).

Wisconsin usury laws do not apply to corporations or limited liability companies, such as SolarCode. Wis. Stat. § 138.05(6). The corporate usury exception extends to corporate makers, such as members of an LLC. *Wild, Inc. v. Citizens Mortg. Inv. Tr.*, 290 N.W.2d 567, 568–69 (Wis. Ct. App. 1980). If a comaker has a corporate comaker, the comaker's remedy for a difference in the application of the usury laws is the right of contribution. *Id.* at 569 ("Comakers, however, have joint and several liability on notes and have contribution rights against other comakers.").[6] The policy behind the corporate usury exception "is to allow corporations to attract capital by paying any interest they can afford." *Id.* at 568.

While the underlying note is not quoted in *Wild*, there, the plaintiffs—a corporation and its shareholder—claimed that two loans in the total amount of $8 million for the purpose of financing a hotel were usurious. *Id.* After discussing the corporate usury exception, the court

---

[6]Wisconsin usury laws also do not apply to loans of $150,000 or more. *Id.*

affirmed summary judgment for the lenders, holding that the plaintiff was "a sophisticated real estate developer with extensive experience in dealing with lending institutions . . . . He freely negotiated these agreements with full knowledge of what he was doing . . . ." *Id.* at 568–69. In another case, the court applied the Wisconsin corporate usury exception to a promissory note. *In re Rent-Rite Superkegs W., Ltd.*, 603 B.R. 41, 56 (Bankr. D. Colo. 2019), *rev'd in part on other grounds*, 623 B.R. 335 (D. Colo. 2020). There, the court, after a thorough review of Wisconsin law, agreed that there is no limit on the interest rate chargeable to a corporation or limited liability company. *Id.* at 56, 61. The court enforced a note with an interest rate in excess of 120% per annum. *Id.* at 62–63.

In this case, the "Fixed Interest Rate" line on the 2022 Note refers to the payment schedule:



ECF No. 33-2 at 2. Therefore, as will be discussed further below in Section 3.2, the usury laws may not be a perfect fit. However, even if they are not, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; *in relation to the language of* surrounding or

*closely-related statutes . . . ." State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 681 N.W.2d 110, ¶ 46 (Wis. 2004) (emphases added).

Consistent with these principles, where the usury laws are excepted, and absent a non-waived defense independent of the general principle of usury, Wisconsin courts uphold the bargain that a maker struck when he signed the note. *See Deutsche Bank Nat'l Tr. Co. v. Wuensch*, 911 N.W.2d 1, ¶ 13 n.8 (Wis. 2018). There, where "[t]he principal amount for which [the maker] was found liable exceed[ed] the original principal amount in the Note," but the maker knowingly agreed to that arrangement, judgment against the maker and in favor of the lender was proper. *Id.*; *id.*, ¶¶ 22, 34; *see also Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1552 (7th Cir. 1990) ("As terse as it was, and as unfavorable to Pabst as ensuing events proved it to be, the Pabst–Pincus agreement was not susceptible to more than one construction.") (applying Wisconsin law) (citations omitted).

Defendants point to one case where a payment schedule that would return a much higher amount than the original loan was dubbed a "ridiculous" result. ECF No. 43 at 3 (citing *Carmichael*, 336 F.3d at 641). But that case, brought under the Truth in Lending Act, dealt with a situation where the lender's disclosures included an erroneously overstated finance charge, which the plaintiffs attempted to use in their favor to show that a reasonable person would be uncertain as to what they owed. *Id.* That position was rejected by the Seventh Circuit. *Id.* Further, no such error is alleged here. Unlike the individual plaintiffs in *Carmichael*, Defendants are sophisticated developers, frequently sign these types of funding agreements, and have signed this type of funding agreement with Eclipse before. The Court, for its part, has not located any cases applying Wisconsin law that hold that such an arrangement is not enforceable. Therefore, under

these circumstances, there is no absurd or unconscionable result. Eclipse's motion for summary judgment on this issue will be granted, though the discussion does not end here; the issue of interest will be taken up further in Section 3.2.

### 3.2 Defendants' Motion for Partial Judgment on the Pleadings

Defendants move for partial judgment on the pleadings with respect to the amount of interest applicable to the 2022 Note. ECF No. 39 at 1. The Court therefore confines this analysis to the facts set forth in the pleadings and the attachments to the pleadings. *See supra* Section 1.2. Defendants contend that "[t]he Note does not expressly state the principal amount that was actually borrowed, nor does it state the amount of interest that is to accrue on the amount borrowed"; therefore, interest should be calculated at 5% per annum on the amount actually borrowed in accordance with Wis. Stat. § 138.04. *Id.* at 2–3, 7. As to the first point, the Court already found that the 2022 Note *does* state the amount Eclipse actually paid to Defendants by reference to the balance on the 2021 Note and the additional $239,000 advance, which the amount due and owing on the 2022 Note was meant to "consolidate[]." ECF No. 33-2 at 3.

As to the issue of interest, contrary to Defendants' assertion that the 2022 Note violates Wisconsin law because "the rate of interest is not clearly expressed in writing," ECF No. 39 at 3, negotiable instruments do not require a rate of interest. Wis. Stat. § 403.104(1) (defining "negotiable instrument" as "an unconditional promise to pay a fixed amount of money, with or without interest or other charges described in the promise or order"). As shown in the screenshot above, the "Fixed Interest Rate" box on the 2022 Note is checked, but the line designated to fill in a fixed interest rate refers to the payment schedule. Quoting Wis. Stat. § 403.112(2),

applicable to negotiable instruments, Defendants argue that the 2022 Note "provides for interest, but the amount of interest payable cannot be ascertained from the description," therefore, "interest is payable at [5% per annum] and at the time that interest first accrues." ECF No. 39 at 6.

However, if the amounts set forth in the payment schedule are meant to represent scheduled pre-default payments towards the principal ($514,000) with interest (albeit at an exorbitant rate), that rate is calculable and ascertainable. *See Superkegs*, 603 B.R. at 52 (daily payments of principal and interest calculated against amount of note to ascertain rate); *Rinaldi v. HSBC Bank USA, N.A.*, Nos. 13-CV-336-JPS, 13-CV-643-JPS, 2013 WL 5876233, at *6 (E.D. Wis. Oct. 31, 2013), *aff'd*, 778 F.3d 672 (7th Cir. 2015) ("Wis. Stat. § 403.112 allows for interest to be either fixed or variable."); *cf. Gunther v. Tworek*, 690 N.W.2d 885, ¶ 13 (Wis. Ct. App. 2004) (interest not calculable where notes included contradictory payment times).

If the 2022 Note is not meant to include pre-default interest at all, that would also be appropriate in accordance with Wis. Stat. § 403.104(1). Therefore, Defendants' argument is not a winning one, no matter which way it is cut. As to the amount of post-default, prejudgment interest at issue in this case, Eclipse plainly seeks that interest at a rate of 5% per annum, commencing on Defendants' date of default: February 15, 2022.

The Court will therefore grant Eclipse's motion for summary judgment as to interest and deny Defendants' motion for partial judgment on the pleadings on the same. Partial final judgment will be entered based on this holding and the holding set forth above in Section 3.1. Despite the stay as to Defendant Robin L. Lehner, there is no just reason to delay judgment as to the other Defendants given Eclipse's right to immediate payment and the fact that the stay may be lengthy. *See* Fed. R. Civ. P. 54(b);

*see also supra* note 1. In accordance with the 2022 Note, the Court will also award Eclipse its reasonable attorneys' fees and costs of collection. ECF No. 33-2 at 3. Also in accordance with the 2022 Note, the partial final judgment will operate against Defendants jointly and severally. *Id.*[7]

However, the Court cannot enter that judgment without a precise calculation of prejudgment interest. *See Pace Commc'ns, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 591 (7th Cir. 1994). Therefore, the Court will order that the parties meet and confer on the precise calculation of prejudgment interest and the amount of reasonable attorneys' fees and costs, and in the event they are not able to reach an agreement, the Court will also set a briefing schedule on these issues.

### 3.3    Eclipse's Motion for Summary Judgment – Collateral Assignment

Eclipse also moves for (1) a declaration "that the Collateral Assignment of Membership Interest secures payment of [Defendants'] obligations under the [2022 Note], as such obligations may be reduced to a money judgment"; (2) an order foreclosing upon SolarCode Holdings' entire membership interest in SolarCode that was collaterally assigned to Eclipse; and (3) an order that SolarCode Holdings transfer such membership interest to Eclipse. ECF No. 32.

In opposition, Defendants first argue that the Collateral Assignment of Membership Interest is unenforceable because Eclipse did not perform under the 2022 Note. ECF No. 43 at 6. This argument relies upon

---

[7]The Court does not analyze or include "Delinquency Charges," because, though referenced in the complaint and ostensibly contemplated by the 2022 Note, Eclipse does not include them in its relief sought on summary judgment or substantively discuss them in its briefing. ECF No. 32; ECF No. 37 at 6.

Defendants' erroneous interpretation of the 2022 Note as requiring Eclipse to disburse $3,915,000 to Defendants, when the 2022 Note plainly only details a total disbursement of $514,000. *See supra* Section 3.1.

However, the text of the Collateral Assignment of Membership Interest saves Defendants. Contrary to the 2022 Note, the Collateral Assignment of Membership Interest sets forth an agreement that, in exchange for collaterally assigning SolarCode Holdings' membership in SolarCode to Eclipse, Eclipse would loan Defendants $3,915,000. ECF No. 33-3. The Collateral Assignment of Membership Interest further refers to the 2022 Note as an agreement whereby Eclipse would loan Defendants $3,915,000. *Id.* However, the Collateral Assignment of Membership Interest is dated October 15, 2021, approximately three months before the execution of the 2022 Note. *Id.*

As the Court already determined, the 2022 Note, by its unambiguous terms, does not show any agreement by Eclipse to loan Defendants $3,915,000, but rather that Eclipse would loan a total of $514,000 (which included excusing a former default by Defendants), in exchange for a return over time through a payment schedule. *See supra* Section 3.1. The 2022 Note includes a clear integration clause that the 2022 Note is "a complete and exclusive statement of its terms . . . this note may not be contradicted or varied by evidence of prior, contemporaneous or subsequent oral agreements or discussions . . . . [T]his note may not be supplemented or modified except by writing signed by lender and maker." ECF No. 33-2 at 3. The Collateral Assignment of Membership Interest also includes an integration clause stating that it may "only be amended, modified, or supplemented by written agreement duly executed by the Parties." *Id.* at 4; *see Town Bank v. City Real Est. Dev., LLC*, 777 N.W.2d 98, ¶ 11, *aff'd*, 793

N.W.2d 476 (Wis. Ct. App. 2009) ("It is a well-established rule that an integration clause, in conjunction with the parol evidence rule, bars the introduction of extrinsic evidence to vary or contradict the terms of a writing.").

In *Town Bank*, the parties entered into an agreement for a $2.5 million loan. *Id.*, ¶ 1. The defendant argued that the plaintiff "was also obligated to provide an additional $6.5 million loan under a prior loan commitment." *Id.* Neither party argued that the integration clause in the second agreement was ambiguous, *id.*, ¶ 11, and the court found "no term left open to further explanation" on the face of the second agreement, *id.*, ¶ 12. The second agreement's integration clause barred the introduction of "any prior agreement to vary [its] terms." *Id.* Simply put, "the unambiguous language of the agreement, considered in conjunction with its integration clause, makes the [second agreement] a stand-alone agreement, which is a final, complete and conclusive expression of the parties' intent." *Id.*, ¶ 13. Therefore, the Court analyzed the agreements separately. Specifically, after analyzing the second agreement, the Court turned to the first agreement to determine "whether it commits [the plaintiff] to provide an additional $6.5 million loan," ultimately holding that it did not. *Id.*, ¶ 14.

In this case, neither party argues that the 2022 Note modifies the Collateral Assignment of Membership Interest, and neither party argues that the documents should be integrated in any manner. Indeed, Defendants do not argue that the Collateral Assignment of Membership Interest is extrinsic evidence evincing the parties' intent as to the 2022 Note in the event the Court found the 2022 Note ambiguous. Therefore, the Court analyzes the documents separately, as the parties do, and as counseled by *Town Bank*.

The Collateral Assignment of Membership Interest plainly states that the rights to the assigned membership interest are tied to a loan for $3,915,000, which never came to fruition and/or was repudiated by the 2022 Note. *See, e.g.*, *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, No. 13-CV-743-JPS, 2016 WL 53871, at *9 (E.D. Wis. Jan. 4, 2016), *aff'd*, 848 F.3d 822 (7th Cir. 2017). Therefore, the Collateral Assignment of Membership Interest is unenforceable. Eclipse's motion for summary judgment as it relates to the Collateral Assignment of Membership Interest will be denied, and the underlying claim will be dismissed with prejudice as against Defendants.

4.    **CONCLUSION**

Based on the foregoing analysis, the Court denies Defendants' motion for partial judgment on the pleadings. ECF No. 40. The Court grants in part and denies in part Eclipse's motion for summary judgment. ECF No. 32. If the parties are not able to agree, the Court orders the parties to submit additional briefing on the precise calculation of prejudgment interest, which shall also include briefing as to the amount of reasonable attorneys' fees and costs.[8] Eclipse's moving brief will be due **July 5, 2023**. Defendants' response brief will be due **twenty-one (21) days** after Eclipse files its moving brief, and Eclipse's reply brief will be due **fourteen (14) days** after Defendants file their response brief. If the parties are able to reach an agreement on these issues, they should submit a joint statement to that effect by **July 5, 2023**.

---

[8]The briefing should include a meet-and-confer certification in the event the parties are unable to agree.

Accordingly,

**IT IS ORDERED** that Defendants SolarCode, LLC, SolarCode Holdings, LLC, and Roger M. Lehner's motion for partial judgment on the pleadings, ECF No. 40, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff Eclipse Service Inc.'s motion for summary judgment, ECF No. 32, be and the same is hereby **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that Defendants SolarCode, LLC, SolarCode Holdings, LLC, and Roger M. Lehner are liable, jointly and severally, to Plaintiff Eclipse Service LLC in the amount of $3,915,000.00;

**IT IS FURTHER ORDERED** that Count II of Plaintiff Eclipse Service Inc.'s complaint, ECF No. 1-2, titled "Order Directing Turnover of Membership Interest," be and the same is hereby **DISMISSED with prejudice** as against Defendants SolarCode, LLC, SolarCode Holdings, LLC, and Roger M. Lehner;

**IT IS FURTHER ORDERED** that Plaintiff Eclipse Service Inc.'s motions to restrict, ECF Nos. 34, 45, be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that, if they are unable to agree, the parties submit additional briefing on the precise calculation of prejudgment interest, which shall also include briefing as to the amount of reasonable attorneys' fees and costs; Plaintiff Eclipse Service Inc.'s moving brief will be due **July 5, 2023**; Defendants SolarCode, LLC, SolarCode Holdings, LLC, and Roger M. Lehner's response will be due **twenty-one (21) days** thereafter; and Plaintiff Eclipse Service Inc.'s reply will be due **fourteen (14) days** thereafter; if the parties reach an agreement on these issues, they may submit a joint statement to that effect by **July 5, 2023**; and

**IT IS FURTHER ORDERED** that the remaining dates in the Court's amended trial scheduling order, ECF No. 14, be and the same are hereby **VACATED**.

Dated at Milwaukee, Wisconsin, this 2nd day of June, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge